United States District Court
Western District of Texas
Austin Division

| | |
|---|---|
| **United States of America,**<br>**Plaintiff,**<br><br>v.<br><br>**KENNY CANO GUZMAN**<br>**Defendants.** | **Cause No. 1:22-CR-122 (5) RP** |

## UNITED STATES SENTENCING MEMORANDUM

Comes now the United States Attorney, for the Western District of Texas, by and through the undersigned Assistant United States Attorney, and files this Sentencing Memorandum.

Defendant has filed a motion for a downward variance in this case. A review of the evidence and this Defendant's role in the offense establishes that she has already received a significant benefit from the plea agreement and cannot justify anything but a guideline sentence in this case.

### 1. The Evidence in this Case

The evidence in this case establishes that beginning in or about late 2019 CS#1 began to provide information to TX DPS agents that Yunier BASULTO-Alvarez was trafficking cocaine and methamphetamine. DEA and Task Force officers began an investigation of the methamphetamine distribution organization led by Yunier BASULTO-Alvarez and others in the Central Texas area in early 2021. Specifically, the agents and officers received information that BASULTO-Alvarez was a multi-kilogram cocaine and methamphetamine distributor based in Austin, Texas. Agents developed a confidential source (CS #1) who provided information about the distribution of kilogram quantities of cocaine and methamphetamine in the greater Austin area. CS#1 has provided officers and agents with credible and reliable information that has led to the prosecution of drug cases on several cases in the past.

1

Agents corroborated the information provided by CS #1 through controlled drug purchases, physical surveillances, drug seizures, , and toll analysis. The investigation revealed that BASULTO-Alvarez receives multi-kilogram quantities of cocaine and methamphetamine as well as counterfeit oxycodone tablets from several sources of supply. Based on this and other information, Agents and officers were able to obtain several T III interceptions of conversations over phones used by Basulto-Alvarez. Thousands of calls were intercepted. During the T III intercepts, KENNY CANO GUZMAN was intercepted in multiple phone calls directly aiding BASULTO-Alvarez in his narcotics distribution, wherein CANO GUZMAN provided narcotics to couriers and customers. CANO GUZMAN was:

> Intercepted in 45 pertinent calls on TIII of BASULTO-Alvarez (TT#2);
> Intercepted in 5 pertinent calls on TIII of BASULTO-Alvarez (TT#6); and
> Intercepted in 8 pertinent calls on TIII of BASULTO-Alvarez (TT#7).

In addition to these, there are numerous other calls in which BASULTO-Alvarez told a customer or courier to go the house/apartment to meet with GUZMAN.  These calls vary in their nature and the resulting culpability of GUZMAN. Specifically, there are four (4) calls in which GUZMAN directly traveled to meet someone for BASULTO-Alvarez to deliver drugs or receive money; ten (10) calls in which GUZMAN was directed to retrieve drugs from the residence and provide them to someone; six (6) calls in which GUZMAN received drug proceeds electronically on behalf of BASULTO-Alvarez; and five (5) calls in which GUZMAN and BASULTO-Alvarez talk about GUZMAN receiving drug proceeds in the form of cash.

Again, these vary in directness.  In one example BASULTO-Alvarez asked that GUZMAN "go to the other room and grab a package from a black bag."  When GUZMAN asked for specifics, BASULTO-Alvarez replied: "black bag on the right side of the closet in the room."  GUZMAN is instructed to get one big bag out of that and give it to a customer coming by the residence. In another example, BASULTO-Alvarez told GUZMAN "to go into that drawer" and "to take a little bag out and go to the little store and give it to" the courier. In yet another, BASULTO-Alvarez directs GUZMAN to go

into the nylon bag to get a bag of the cold one (believed to be ice/methamphetamine) to have ready for a courier.

These examples show that GUZMAN repeatedly was instructed to go into locations not in plain sight, at the behest of BASULTO-Alvarez, to retrieve narcotics from where BASULTO-Alvarez had put them for the purpose of distributing on behalf of BASULTO-Alvarez.

On May 12, 2022, based on a controlled buy and other information, DEA agents and other state and local law enforcement officers and investigators established surveillance at 2600 Gracy Farm Ln, Apt. 617 Austin, Texas at around 10:30 am. At approximately 11:50 a.m., agents observed Yoandy Quintana-Valdes, a previously identified courier for the BASULTO-Alvarez Drug Trafficking Organization (DTO), as Quintana-Valdes left BASULTO-Alvarez's apartment carrying a black bag at his side. Agents then observed Quintana-Valdes enter the driver's seat of a blue Nissan Altima. Quintana-Valdes subsequently departed the location as surveillance followed.

At approximately 12:03 p.m., as Quintana-Valdes traveled east bound on Gracy Farm Ln. and was stopped by Austin Police Department (APD) Det. Werner and his K-9 partner "Ciga" standing by in a marked unit to conduct a traffic stop of the Nissan Altima. Ciga is certified by the National Narcotics Detector Dog Association to locate controlled substances. During the traffic stop, APD officers identified the driver as Quintana-Valdes. K-9 Ciga conducted an open-air sniff of the Nissan Altima. K-9 Ciga alerted to the odor of narcotics in the vehicle. The officers then conducted a probable cause search of the vehicle. In the glove box of the vehicle and in the bag which Quintana-Valdes was seen carrying, officers discovered drug paraphernalia and loose U.S. Currency in denominations consistent with the sale of street level narcotics. No other contraband was found, and Quintana-Valdes was released without incident.

The officers believed that Quintana-Valdes would alert BASULTO-Alvarez that he had been stopped by law enforcement officers. At approximately 12:15 p.m., shortly after Quintana-Valdes was released from the traffic stop, agents who had maintained surveillance at 2600 Gracy Farm Ln, Apt. 617, observed BASULTO-Alvarez leave apartment 617 and walk toward his last known vehicle, a gray 2010

Mercedes Benz. BASULTO-Alvarez appeared nervous and was anxiously looking about. It indeed appeared that he had been warned of the officers' presence in the area.

Agents had been advised by CS#1 that BASULTO-Alvarez was always armed with a firearm. Agents observed BASULTO-Alvarez enter the driver's seat of his Mercedes Benz. Agents approached BASULTO-Alvarez and subsequently detained him for fear that he was alerted by Quintana-Valdes and might be fleeing or leaving with evidence. In addition, the agents and officers knew that BASULTO-Alvarez had sold a kilogram of methamphetamine to CS#1 the previous week. Thus, the agents believed they had probable cause to arrest BASULTO-Alvarez. Agents approached the Mercedes-Benz with weapons drawn and ordered BASULTO-Alvarez to exit the car; he complied. He was detained and agents conducted a cursory search of BASULTO-Alvarez. A loaded Berretta 9mm pistol was found in the bag he had carried to the Mercedes. BASULTO-Alvarez is an illegal alien and not allowed to possess a firearm.

Upon being detained, BASULTO-Alvarez voluntarily asked agents "What's going on?" to which agents replied that BASULTO-Alvarez knew why agents were there. Agent Mena asked what was in BASULTO-Alvarez' apartment; he stated that there were guns and drugs in the apartment. BASTULTO-Alvarez then voluntarily provided agents with verbal consent to search his apartment and retrieve the illegal narcotics and contraband. His desire to cooperate was clear and forceful.

Agents then read BASULTO-Alvarez his Miranda Warnings. He stated that he understood his rights, voluntarily waived those rights, and agreed to speak with agents. During questioning, BASULTO-Alvarez admitted that there was a small quantity of methamphetamine and several pistols and rifles in his apartment. BASULTO-Alvarez also told agents that he possessed and stored over 25 kilograms of methamphetamine in a gray Honda Accord bearing Temporary plate 34712V6 which was parked in the parking lot of the apartment complex in front of BASULTO-Alvarez's apartment next to one of his two Mercedes Benz automobiles.

Officer Warner and Ciga were on scene to conduct a search of vehicles in the parking lot. They found the Honda Accord, and K-9 "Ciga" conducted an open-air sniff around the vehicle. Ciga positively alerted to the odor of narcotics. This occurred before any search of the Honda.

BASULTO-Alvarez subsequently instructed agents where the keys to the Honda Accord could be found inside of his apartment. Officers and Agents approached the apartment and found BASULTO-Alvarez' girlfriend/wife, KENNY CANO GUZMAN in the apartment. Agents informed GUZMAN that BASULTO-Alvarez had indicated that drugs and firearms were in the apartment. Further, they informed her that BASULTO-Alvarez had given consent to search the apartment. GUZMAN exited the apartment so that a safety sweep could be conducted by law enforcement. BASULTO-Alvarez was then brought to the apartment and seated on a couch. GUZMAN returned and sat next to him.

Inside Defendant's apartment officers found: 15 grams of a cocaine packaged in plastic bags found on the kitchen table of the residence; 120 grams of methamphetamine found in the top drawer of the bedroom nightstand; 175 grams of blue round pills (which tested positive for Fentanyl) in the top drawer of the bedroom nightstand; a Taurus semi-automatic pistol in the apartment's kitchen, in a drawer to the right of the sink; a Kimber semi-automatic pistol in the top drawer of a nightstand (with the meth and Fentanyl pills); an AR style rifle under the bed; $35,095 in US Currency in the bedroom closet next to a shotgun; along with other evidence of drug trafficking.

During the search of the Honda Accord agents found large saran wrapped bundles with a crystalline substance inside three gray backpacks. The glove box contained multiple quart size Ziploc style baggies with a crystalline substance. The middle console contained smaller Ziploc baggies. The crystalline substance from the trunk, glove box and center console was seized and packaged, and weighed at approximately 36.605 kilograms. A white powdery substance, weighing 710 grams and which later field tested positive for the presence of cocaine, was also found in the Honda. PSR @ para. 7-22; United States Response to Motion to Set Conditions of Release (Doc. 249).

2. **The PSR and Appropriate Sentence**

Because CANO GUZMAN acted at the direction of BASULTO-Alvarez and her activities were limited in the overall conspiracy as noted above, the United States offered a plea to a misprision charge. Defendant's adjusted range of punishment is 21 – 27 months incarceration. PSR @ 62. The PSR did note:

> The Court may find that a misprision defendant's personal guilt of the underlying offense is a circumstance not taken into account in formulating the Misprision guidelines under U.S.S.G. § 2X4.1. The nature of the misprision as a crime strongly suggests that U.S.S.G. § 2X4.1 assumes that the misprision defendant is not guilty of the underlying offense. Therefore, the Court may depart from the Misprision guideline range as long as there is a specific finding that the defendant was guilty of the underlying offense.

PSR @ para. 78. Based o the evidence in this case, this section could easily be applied in this case. In light of the facts and evidence, however, the United States has not moved for application of this guideline. Instead, the application of the guideline range found in the PSR is appropriate in this case. The United States would therefore request that Defendant be sentenced in that range of punishment, 21 – 27 months incarceration.

|  |  |
|---|---|
|  | JAIME ESPARZA |
|  | UNITED STATES ATTORNEY |
| By: | */s/ Mark H. Marshall* |
|  | MARK H. MARSHALL |
|  | Assistant U. S. Attorney |
|  | 903 San Jacinto Blvd., #339 |
|  | Austin, TX 78701 |
|  | State Bar No. 13032500 |

CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of November 2023, I electronically filed the foregoing Memorandum with the Clerk of this Court using the CM/ECF system, which send notification of such filing to all required parties, including counsel for the defendant.

*/s/ Mark H. Marshall*
MARK H. MARSHALL
Assistant U.S. Attorney

United States District Court
Western District of Texas
Austin Division

| | |
|---|---|
| **United States of America,**<br>    **Plaintiff,**<br><br>v.<br><br>**KENNY CANO GUZMAN.**<br>    **Defendants.** | **Cause No. 1:22-CR-122 (5) RP** |

## ORDER

Before the Court is the Defendant's Sentencing Memorandum in this case. The Court will consider the Memorandum at the sentencing hearing.

SIGNED this ____ day of ____ 2023.

_____
UNITED STATES MAGISTRATE JUDGE

7